# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**HOMETOWN TRANSPORTATION, LLC,**
**Employer Below, Petitioner**

**FILED**
**March 25, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-424**          (JCN: 2023019975)

**CHAD LANCASTER,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner Hometown Transportation, LLC, appeals the September 5, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Chad Lancaster timely filed a response. [1] Hometown Transportation did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which had denied the claim, and holding the claim compensable.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that good cause has been shown to vacate and remand the case for the taking of new, additional, or further evidence for a full and complete development of the facts of the case as contemplated by West Virginia Code § 23-5-12a(d) (2022). For the reasons set forth below, the Board's decision is vacated and remanded.

On April 24, 2023, Mr. Lancaster, a driver for Hometown Transportation, was driving to pick up a client to transport to a VA Hospital when he was involved in a car accident. According to the State of West Virginia Uniform Traffic Crash Report, traffic on I-68 was stopped due to a wide load tractor trailer and its pilot car being stationary. Another tractor trailer pulled into both lanes of I-68 to stop oncoming traffic. Mr. Lancaster was approaching the stopped vehicles and attempted to brake but was unable to avoid collision and struck the rear of the tractor trailer that was attempting to stop traffic. Mr. Lancaster sustained serious injuries and could not give a statement to the police at that time. He was transported via helicopter to Ruby Hospital and was diagnosed with a left wrist fracture, right calcaneal fracture, foot fracture, ankle fracture, rib fracture, and face lacerations.

---

[1] Hometown Transportation is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Lancaster is represented by Christopher J. Wallace, Esq.

Mr. Lancaster's medical records indicated that he had been previously diagnosed with polysubstance abuse. In fact, his urinalysis, which was performed sometime following the vehicle accident, was positive for amphetamines, benzodiazepines, cannabinoids, and fentanyl. Laboratory confirmation also showed that Mr. Lancaster was positive for methamphetamine. It does not appear from the record that a blood test was performed. Mr. Lancaster completed an Employees' and Physicians' Report of Occupational Injury on April 27, 2023, indicating that he injured his left leg, ankle, and foot; his right wrist; and ribs on his right side. The Physicians' section was completed by A.J. Monseau, M.D., who indicated Mr. Lancaster sustained injuries to the head, chest, right ankle, and left wrist as a result of an occupational injury.

On May 22, 2023, Syam Stoll, M.D., authored a Physician Review report on the issue of whether the drugs found on Mr. Lancaster's urine drug screen would have affected his job performance due to mental and physical impairment and resulted in his injuries. Dr. Stoll concluded that the drugs in Mr. Lancaster's system would have directly impacted his mental and situational awareness, as well as his reaction time, and resulted in his injuries. Dr. Stoll acknowledged that the benzodiazepines and the fentanyl could have been administered by EMS during transport for pain control but noted that the marijuana metabolite and methamphetamine would have been entirely for recreational use. Indeed, Dr. Stoll noted, the medical records revealed that Mr. Lancaster had a history of cocaine use disorder and that he was a recreational marijuana user. Dr. Stoll explained that Mr. Lancaster's methamphetamine levels were 14,000 ng/ml and that the test cut off was 250 ng/ml, and his marijuana metabolite levels were 130 ng/ml with a cut off of 5 ng/ml. According to Dr. Stoll, methamphetamine can be detected in a person's urine for up to seventy-two hours after the last dose.

By order dated May 23, 2023, the claim administrator denied the claim, finding that the "disability complained of was not due to an injury or disease received in the course of and resulting from employment." Mr. Lancaster protested the order to the Board.

On July 19, 2023, Michael J. Coyer, Ph.D., a forensic toxicologist, authored a report in which he opined that there was no evidence that Mr. Lancaster was under the influence of methamphetamine or marijuana at the time of the accident. Dr. Coyer found no memorialized observations of impairment in the medical records or police reports. Dr. Coyer further noted that a positive urine screen is only an indication that Mr. Lancaster may have used or been exposed to these substances some time prior to the incident but did not establish actual impairment. Dr. Coyer stated there was simply no way to determine the amount of drugs used, the time of use, or the effects of use based solely on the urine test results. Dr. Coyer cited a few medical articles and studies which he averred supported his position.

As part of his protest to the Board, Mr. Lancaster also submitted a transcript of a phone conversation between his counsel and the client Mr. Lancaster was on his way to

2

pick up when the accident occurred. The client stated that he spoke to Mr. Lancaster on the phone that day and that Mr. Lancaster stated he was on the way to pick up the client at that time. The client stated the phone call lasted about two minutes and that Mr. Lancaster was easy to understand, was not slurring his words, and did not seem to be impaired.

Mr. Lancaster also signed an affidavit in which he indicated that he was not under the influence of any substance or alcohol at the time of the accident and simply could not stop in time to avoid hitting the vehicles stopped on the interstate.

By order dated September 5, 2023, the Board reversed the claim administrator's order rejecting the claim and held the claim compensable for an unspecified fracture of the right foot, rib fracture, other lower leg fracture, and nondisplaced fracture of the left wrist. The Board found that it was uncontroverted that Mr. Lancaster was injured when he rear-ended a vehicle while traveling to pick up a client. The Board acknowledged Hometown Transportation's argument that Mr. Lancaster was under the influence of illicit drugs at the time of the accident but found that no blood test had been administered as set forth in West Virginia Code § 23-4-2(a) (2023). The Board noted that only a urine test had been administered following the accident.

The Board found that while Dr. Stoll opined that the drugs in Mr. Lancaster's system would have directly impacted his mental and situational awareness and his physical reaction time, Dr. Coyer had stated that it was impossible to tell whether Mr. Lancaster was actually impaired by the drugs at the time of the accident. The Board noted Dr. Coyer's statements that a positive urine screen was only an indication that Mr. Lancaster may have used or been exposed to drugs at some time prior to the incident, that impairment was not corroborated by medical or police reports, and that there was no way to determine the effects the drugs may have had on Mr. Lancaster at the time of the accident. The Board further noted the transcript of the phone call between Mr. Lancaster's counsel and the client, in which the client indicated that Mr. Lancaster did not seem impaired. Given this evidence, the Board concluded that Mr. Lancaster established that he had suffered an injury in the course of and resulting from his employment and that the "defense found in W. Va. Code § 23-4-2(a) has not been met."[2] Hometown Transportation now appeals and filed an accompanying motion for stay, which this Court granted by order dated November 9, 2023.

---

[2] West Virginia Code § 23-4-2(a) (2023) provides as follows:

Notwithstanding anything contained in this chapter, no employee or dependent of any employee is entitled to receive any sum under the provisions of this chapter on account of any personal injury to or death to any employee caused by a self-inflicted injury or the intoxication of the employee. Upon the occurrence of an injury which the employee asserts, or

(continued . . .)

3

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Hometown Transportation argues that this Court should remand the matter for further consideration as it appears the West Virginia State Police has now filed a criminal complaint charging Mr. Lancaster with driving under the influence, inflicting

---

which reasonably appears to have, occurred in the course of and resulting from the employee's employment, the employer may require the employee to undergo a blood test for the purpose of determining the existence or nonexistence of evidence of intoxication: *Provided*, That the employer must have a reasonable and good faith objective suspicion of the employee's intoxication and may only test for the purpose of determining whether the person is intoxicated. If any blood test for intoxication is given following an accident, at the request of the employer or otherwise, and if any of the following are true, the employee is deemed intoxicated and the intoxication is the proximate cause of the injury:

. . . .

(2) If there was, at the time of the blood test, evidence of either on or off the job use of a nonprescribed controlled substance as defined in the West Virginia Uniform Controlled Substances Act, West Virginia Code § 60A-2-201, et seq., Schedules I, II, III, IV and V.

serious bodily injury, and child neglect resulting in serious bodily injury. Hometown Transportation claims that an amended police report is forthcoming but was unable to be submitted within the timeframe before the Board and that, as such, remand is necessary for a complete development of the facts.

Hometown Transportation also argues that the Board was clearly wrong, even without having considered the new police report, in holding the claim compensable in light of Mr. Lancaster's intoxication. According to Hometown Transportation, Mr. Lancaster had a documented history of substance abuse disorder and, on the day of the accident, tested positive for multiple substances. Hometown Transportation argues that Mr. Lancaster's levels for these substances were significantly elevated, suggesting that his drug use was chronic, very recent, or both. While Dr. Coyer opined that the evidence did not establish Mr. Lancaster's impairment at the time of the accident, Hometown Transportation states there is no indication that he was aware of or gave any consideration to Mr. Lancaster's substance abuse history. Hometown Transportation further argues that, despite Dr. Coyer's claims that urinalysis testing is unreliable, urinalysis testing is used by both State and Federal agencies for things such as preemployment screening, random screening, and post-accident screenings. As such, Hometown Transportation contends that the Board erred in considering only the lack of blood testing in determining whether the injury occurred in the course of and resulting from Mr. Lancaster's employment. Hometown Transportation concludes that, in considering Mr. Lancaster's history of substance abuse, a lack of environmental or mechanical contributors, a positive urine screen, and the police report and criminal complaint, the evidence demonstrates that the accident was caused by Mr. Lancaster's intoxication.

Upon review, we conclude that good cause exists to vacate the Board's order and remand this matter for the taking of additional evidence. Pursuant to West Virginia Code § 23-5-12a(d),

> [i]nstead of affirming, reversing, or modifying the decision of the Workers' Compensation Board of Review, the Intermediate Court of Appeals may, upon motion of any party or upon its own motion, for good cause shown, to be set forth in the order of the court, remand the case to the Board of Review for the taking of such new, additional, or further evidence as in the opinion of the court considers necessary for a full and complete development of the facts of the case.

We emphasize that our decision should not be seen as somehow forecasting the outcome of the case. However, we do want to remind the Board that West Virginia Code § 23-4-2(a) does not require a blood test in order to establish intoxication. Rather, it simply provides that there is a presumption of intoxication and proximate cause when a blood test with positive results for a controlled substance (Schedule I-V) is submitted into evidence. An employer may still establish intoxication through other evidence. Although West

5

Virginia Code § 23-4-2(a) requires a blood test, rather than a urine test, to establish a presumption of intoxication, it is not meant to be read that a urine test holds no evidentiary value.

Upon remand, we direct the Board to hold an evidentiary hearing for the taking of "new, additional, or further evidence . . . necessary for a full and complete development of the facts of the case." W. Va. Code § 23-5-12a(d). In addition to considering any new or additional evidence, we further instruct the Board to perform a more thorough analysis of the urine test performed, including consideration of the methamphetamine levels in Mr. Lancaster's system at the time of the urinalysis, the half-life of methamphetamine, and the time between the accident and the urinalysis test.

Accordingly, we vacate the Board's order and remand this matter to the Board for further evidentiary development.[3] The Clerk of this Court is hereby directed to issue the mandate contemporaneously herewith.

Vacated and Remanded.

**ISSUED:** March 25, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

Chief Judge Thomas E. Scarr, not participating

---

[3] Importantly, West Virginia Code § 23-5-12a(d) provides that, upon remand from this Court,

> the Board of Review shall proceed to take new, additional, or further evidence in accordance with any instruction given by the court within 30 days after receipt of the order remanding the case. The Workers' Compensation Board of Review shall give to the interested parties at least 10 days' written notice of the supplemental hearing, unless the taking of evidence is postponed by agreement of parties, or by the Board of Review for good cause. After the completion of a supplemental hearing, the Workers' Compensation Board of Review shall, within 60 days, render its decision affirming, reversing, or modifying the former action of the Workers' Compensation Board of Review. The decision shall be appealable to, and proceeded with, by the Intermediate Court of Appeals in the same manner as other appeals.